IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP,<br><br>PLAINTIFF,<br><br>v.<br><br>CABLE NEWS NETWORK, INC.<br><br>DEFENDANT. | CASE NO.: 0:22-CV-61842-AHS<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |

By and through the undersigned counsel, Plaintiff, President Donald J. Trump ("Plaintiff") submits this Response in Opposition to Defendant's Motion to Dismiss and Incorporated Memorandum of Law.

I.   **Introduction**

"*Should we – should journalists pull out their Trump playbook in order to deal with what Elon Musk is doing at Twitter?  Is it a – is it a page out of the same book?*"
- Don Lemon, CNN News Anchor, December 19, 2022. [1]

What is the "Trump playbook" that Don Lemon and other "journalists" at CNN were using? It was a concerted plan to defame a Republican President and to skew a national election through falsehoods and distortions.

CNN opens its Motion to Dismiss and Incorporated Memorandum of Law ("Motion") quoting *New York Times v. Sullivan,* 376 U.S. 254 (1964), for its proposition that the First Amendment requires a "profound commitment to the principle that debate on public issues should be uninhibited." Motion at 1 (quoting 376 U.S. at 270). Plaintiff agrees but asks: Would a corrupt, defamatory *playbook* promote an "uninhibited, robust, and wide-open" debate, or impede it? The Complaint in this case does not attack Constitutional principles or thwart legitimate political discourse; it challenges the purveyors of libel and slander who abuse the Constitution, and it challenges those who use illicit *playbooks* and other tactics in a results-oriented fashion. More

---

[1] *CNN This Morning,* Transcript Providers, https://transcripts.cnn.com/show/ctmo/date/2022-12-19/segment/02.

1

directly, the Complaint challenges a major media outlet that set out to misuse its power to manipulate its audience in a dishonest effort to discredit the Plaintiff for political purposes. CNN defends this relentless campaign by characterizing its news product as pure opinion and rhetorical hyperbole, while suggesting that calling someone Hitler—which was *per se* defamation for decades following World War II—is now just "colorful" language that does not even merit a jury's consideration. Propaganda masquerading as journalism, however, is not what the First Amendment was established to insulate from liability.

II. **Statement of Facts**

Plaintiff alleges, as fact, that:

- CNN uttered statements that falsely[2] equated him with Hitler together with CNN falsely asserting that, in a future term in office, Plaintiff will be Hitler like. Compl. ¶ 41, 51, 61, 69.
- Being compared to Hitler in this manner causes and did cause reputational harm. *Id.* ¶ 36, 43, 44, 45, 50, 63, 64, 68, 72.
- CNN uttered these statements as purported fact—not opinion or hyperbole. *Id.* ¶ 41, 61.
- CNN took credit for the certified results of the Presidential Election of 2020, and is actively working to prevent Plaintiff from winning the Presidency in 2024. *Id.* ¶ 1, 14.
- CNN uttered the false and defamatory statements as part of its coordinated campaign to harm Plaintiff's chances at winning the Presidency in 2024. *Id.* ¶ 1, 12, 23.
- When CNN compares Trump to Hitler, the comparison is false. *Id.* ¶ 36, 39, 42, 47, 55, 59, 62, 65, 74 . The falsity of this comparison is both explicitly stated in Plaintiff's claims and implied in the allegations. *See id*.

III. **Legal Standard**

When evaluating a motion to dismiss a complaint for failure to state a claim, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences therefrom in the plaintiff's favor. *Deuel v. Santander Consumer USA, Inc.*, 700 F.Supp.2d 1306, 1309 (S.D. Fla. 2010) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[2] The Motion complains the Complaint "does not explain why that allusion is false," Motion at 6, as if the Complaint were missing an element of falsity. However, having identified the falsehood, and asserting that it is false (*i.e.*, not true), there is no case law requiring a Plaintiff to plead facts that show why a false statement is, in fact, false. The Complaint clearly states that Plaintiff is not Hitler-like nor would be Hitler-like in any future political role. To the extent that CNN complains that the Complaint does not explicitly state that Plaintiff is not responsible for the murder of at least 12 million people, which occurred prior to Plaintiff's birth, the Court can take judicial notice of such facts.

"Accordingly, a well pleaded complaint will survive a motion to dismiss even if it appears that recovery is remote and unlikely." *Id.* at 1309 (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 556). Indeed, a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Cole-Parmer Instrument Co. v. Prof'l Labs., Inc.*, 568 F.Supp.3d 1307, 1313 (S.D. Fla. 2021) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 556).

IV. **Argument**

    A. **The Question of CNN's Actual Malice Toward President Trump Is Sufficiently Alleged to Allow for Jury Determination.**

Under the actual malice standard put forth by the Supreme Court in *New York Times v. Sullivan*, "[i]f a false and defamatory statement is published with knowledge of falsity or a reckless disregard for the truth, the public figure may prevail" in a suit for defamation. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). This actual malice standard is subjective and "asks whether the publisher *in fact* entertained serious doubts as to the truth of his publication." *Berisha v Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020) (internal quotation marks omitted) (emphasis in original) (quoting *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1493 (11th Cir. 1988)). The Complaint has sufficiently pled this element.

Plaintiff's Complaint provides numerous examples of CNN publishing statements about President Trump with reckless disregard for their truth. The Complaint alleges that CNN anchors consistently labeled Plaintiff's election integrity concerns a "Big Lie,"—*i.e.*, an intentional and deceptive propaganda strategy used by Nazis such as Adolph Hitler and Joseph Goebbels.[3] *See* Compl. ¶¶ 16, 19, 28. CNN anchors tossed this label around without regard for the absolute and

---

[3] Defendant alleges that Plaintiff unreasonably builds "inference upon inference in order to find defamatory meaning" in the term the "Big Lie." Motion at 9. Defendant further contends that the "average reader[] would not plausibly understand 'Big Lie' to be an allusion to the Nazis." *Id.* CNN's reference to the "Big Lie," is not merely inferential. CNN anchors have explicitly stated on air that the term "Big Lie," refers to Nazi propaganda, utilized by Adolph Hitler. Compl. ¶ 24. Similarly, CNN programming has used the term the "Big Lie," while simultaneously displaying imagery of Adolph Hitler and the Nazis. Under these circumstances, the correlation between the "Big Lie," and Nazism is unmistakable.

irrefutable truth—that President Trump believed and continues to believe, with solid factual support, that the 2020 election had material irregularities.

Plaintiff's assertion of actual malice is further supported by the Complaint's allegations that CNN and its employees were motivated to smear Plaintiff and undermine his political standing. Contrary to Defendant's assertions, evidence of a defendant's motivation is relevant to the plausibility of actual malice. *Herbert v. Lando*, 441 U.S. 153, 160 (1979) ("*New York Times* [*v. Sullivan*] and its progeny made it essential to proving liability that the plaintiff focus on the conduct and state of mind of the defendant."); *see also Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) ("[E]vidence of ulterior motive can often bolster an inference of actual malice."). Indeed, in establishing the "belief of the defendant in the truth of [its] statement," plaintiffs have been permitted to rely on either direct or circumstantial evidence of "threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill-will or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a [news source], custom and usage with respect to the treatment of news items of the nature of the one under consideration." *Herbert,* 441 U.S. at 164 n.12 (quoting 50 Am.Jur.2d, Libel and Slander § 455 (1979)). Thus, evidence of hostility which the defendant may have borne toward the plaintiff can be both relevant and probative in establishing actual malice. *Hotchner v. Castillo-Puche*, 404 F.Supp. 1041, 1047 (S.D.N.Y. 1975) (noting that "subjective factors" such as "corrupt motive or some personal spite or desire to injure the plaintiff," may be relevant to the issue of actual malice.) The Complaint provides ample evidence that the Defendant's "reporting" was motivated, not by truth, but rather by ill will and hostility toward the Plaintiff. For example, the Complaint discusses an instance in which a CNN employee was recorded boasting about the network's role in preventing Plaintiff's re-election. Compl. ¶ 23. This evidence supports the allegation that CNN's broadcasts were motivated by an intent to destroy the Plaintiff politically, rather than by a striving to accurately report current events.

Finally, CNN contends that Plaintiff must, at this preliminary stage in the litigation, be able to identify with specificity each individual at CNN responsible for the defamatory publications.

4

Motion at 17-18. Defendant's argument was considered and rejected by this Court in *Dershowitz v. Cable News Network, Inc.,*: "The Court does not accept CNN's argument that a public figure defamation plaintiff must identify and plead (before discovery) each responsible decision maker within a news organization." 541 F.Supp.3d 1368 (S.D. Fla. 2021). This Court concluded, "[i]n a case involving a large news organization where the responsible decision makers may not be otherwise known, a plaintiff must be permitted to plead facts that would plausibly establish actual malice without identifying a specific person." *Id.* Identifying the persons responsible for the broadcasting decisions is a "matter for discovery," and thus need not be plausibly alleged to survive a motion to dismiss. *Id.* Accordingly, Defendant's argument to the contrary should be rejected here, too.

### B. The Sustained Defamation of Falsely Linking President Trump to Nazis Provides a Perfect Vehicle for Supreme Court Reexamination of *Sullivan.*

The Court's holding in *New York Times v. Sullivan* was largely premised on the notion that a free and robust marketplace of ideas requires that the press have adequate "breathing space" for free expression. *Sullivan*, 376 U.S. at 271. The Court reasoned that the press should not be faced with unfettered liability for unintentionally publishing erroneous statements which, to some degree, is inevitable in a fastmoving marketplace of ideas. *Id.* Yet, the *Sullivan* Court's understanding of how a free press should function is no longer the reality in the modern age.[4] Indeed, it seems unlikely that at the time *Sullivan's* actual malice standard was pronounced, the Court envisioned a news outlet which seek to indoctrinate its audience rather than inform. *Sullivan's* standard no longer merely provides "breathing space" for the occasional misstatement, but rather, offers a nearly impenetrable shield to the media, allowing it to publish defamatory statements targeting political enemies, without fear of consequence. This has led to a lack of public confidence in the media,[5] and in the absence of serious self-correction the courts are in a critically

---

[4] David A. Logan, *Rescuing Our Democracy by Rethinking New York Times Co. v. Sullivan*, 81 OHIO ST. L.J. 759, 803 (2020) ("Our current media environment would have been totally unrecognizable to the members of the Supreme Court a half-century ago.").

[5] *Id.* at 796–97 ("The decline in public confidence in a broad range of institutions has accelerated in recent years and confidence in the press is at its lowest ebb in the history of the Gallup

important position to reign in the reckless disregard for the truth that has flourished under *Sullivan's* impact.

Given this shift in the modern media landscape, numerous Supreme Court Justices have expressed the need for a re-examination of *Sullivan's* "almost impossible standard." *McKee v. Cosby*, 139 S. Ct. 675, 675 (2019) (Thomas, J., concurring in denial of certiorari); *see also Dun & Bradstreet*, Inc*., v. Greenmoss Builders, Inc.,* 427 U.S. 749, 767 (1985) (White, J., concurring in judgment) ("I have also become convinced that the Court struck an improvident balance in the *New York Times* case between the public's interest in being fully informed about public officials and public affairs and the competing interest of those who have been defamed in vindicating their reputation."); *Rosenblatt v. Baer*, 383 U.S. 75, 92-93 (1966) (Stewart, J., concurring) ("No matter how gross the untruth, the New York Times rule deprives a defamed public figure of any hope for legal redress without proof that the lie was a knowing one or uttered in reckless disregard of the truth. That rule should not be applied except where a State's law of defamation has been unconstitutionally converted into a law of seditious libel."). Recently in *Coral Ridge Ministries Media*, Justice Thomas noted several deficiencies in the *Sullivan* standard, including its tendency to insulate those who perpetuate lies, leaving public figures without any avenue through which to redress reputational injury: "This case is one of many showing how *New York Times* and its progeny have allowed media organizations and interest groups to 'cast false aspersions on public figures with near impunity.'" 142 S. Ct. 2453, 2455 (Thomas, J., dissenting from denial of certiorari) (citing *Tah v. Global Witness Publ'g, Inc.*, 991 F.2d 231, 245 (D.C. 2021) (Silberman, J., dissenting in part)). Similarly, in *Berisha v. Lawson*, Justice Gorsuch discussed the inadequacy of the *Sullivan* standard in light of the fact that the "rise of 24-hour cable news and online media platforms," has facilitated the unfettered "spread of disinformation." 141 S. Ct. 2424, 2424-25 (2021) (Gorsuch, J., dissenting from denial of certiorari). Justice Gorsuch continued, "it's unclear how well these modern developments serve *Sullivan's* original purpose. Not only has the doctrine evolved into a subsidy for published falsehoods on a scale no one could have foreseen, it has come

---

Poll.  Even more troubling is evidence that Americans are split when asked if the media is actually an enemy of democracy.")

to leave far more people without redress than anyone could have predicted." *Id.* at 2429. This jurisprudence highlights that *Sullivan's* actual malice standard neither comports with the modern media landscape nor serves its intended purpose of ensuring the proliferation of information and ideas to the public. *See Dun & Bradstreet, Inc.,* 427 U.S. at 767 ("In a country like ours, where the people purport to be able to govern themselves through their elected representatives, adequate information about their government is of transcendent importance. . . . But these First Amendment values are not at all served by circulating false statements of fact about public officials.").

As discussed above, the Complaint adequately establishes that CNN acted with actual malice given that it published statements about President Trump with knowledge of their falsity, or, at a minimum, with reckless disregard for whether these false statements are true. However, even if this Court disagrees, Plaintiff urges it to refrain from "reflexively apply[ing]" the *Sullivan* standard. *McKee*, 139 S. Ct. at 676. Rather, the instant case presents factors which warrant reconsideration of the applicability of the standard: (1) a "news network" which concedes that its broadcasts and publications are not intended as truthful reporting of current events, but rather as hyperbole; (2) a public figure who has suffered substantial injury as a result of the defamatory statements made by the "news network;" and (3) pervasive defamatory statements which are intended to poison the marketplace of ideas, indoctrinate audiences, and obtain a particular political outcome, rather than foster robust debate and free expression. Surely, this is not what was envisioned by the *Sullivan* Court. Given these circumstances, the Court should reconsider whether *Sullivan's* standard truly protects the democratic values embodied by the First Amendment, or, instead, facilitates the pollution of the "stream of information about public officials and public affairs" with false information. *Dun & Bradstreet, Inc.*, 427 U.S. at 769.

### C. The Plaintiff's State of Mind Regarding Election Fraud is Genuine and Increasingly Supported by Tangible Evidence.

The "Big Lie" accusation wrongly assumes that President Trump had no basis to question the accuracy of the 2020 election results. Subtly, CNN's Motion claims that "evidence of *material* election fraud does not exist." Motion at 2. That qualifier is evidence that even CNN acknowledges that there is demonstrable, and even increasing, evidence of fraud in the 2020 election, but CNN

arbitrarily and with no basis in fact stakes the claim that the fraud did not change the overall outcome. The fact that two parties can sincerely disagree on materiality is why branding one side as a Nazi-like propagandist is absurd and defamatory.

The focus of the Complaint is on the reckless disregard for truth, and aggressive political advocacy, of a CNN campaign to wrongfully liken President Trump to Adolf Hitler. But even to the extent that the Plaintiff ultimately chooses to present evidence of President Trump's state of mind, it will be able to point to large-scale supporting evidence that has emerged publicly around the country. For example, since the 2020 election, The Heritage Foundation's Election Fraud Database contains 1,402 proven instances of election fraud, 1,209 criminal convictions, and 48 civil penalties.[6] Courts have revisited and invalidated ad hoc changes to the election process, *see Teigen v. Wisconsin Elections Comm'n*, 976 N.W.2d 519 (Wis. 2022); *Ball v. Chapman*, 284 A.3d 1189 (Pa. 2022), and the Georgia Supreme Court recently reversed and remanded a case challenging Fulton County's handling of 147,000 absentee and mail-in ballots.[7] Even the fundamental issues of state legislative power over federal election processes, the Elections Clause, and judicial review of state legislative action regarding federal elections are now squarely before the Supreme Court in *Moore v. Harper*, 142 S. Ct. 2901 (2022) (mem).

Further, consistent with their biased approach to election integrity, media outlets such as CNN were quick to dismiss President Trump's concerns about a politicized FBI meddling in national elections. However, the recently released "Twitter Files" prove that President Trump had it right. Not only did the FBI and Twitter work together to censor coverage of the Hunter Biden laptop story under the false pretense that the laptop was "hacked" and leaked by Russian agents aimed at influencing the 2020 U.S. Presidential Election, but they also met with various reporters, media companies, and social media firms in September 2020 to prepare for a possible "Hack-and-Dump" operation related to the Hunter Biden laptop story. "The goal was to shape how the media

---

[6] *Election Fraud Cases*, HERITAGE FOUND., https://www.heritage.org/voterfraud-print/search.
[7] Gabriella Nunez, *Georgia Supreme Court sends lawsuit over 2020 election back to appeals court,* ALIVE, (Dec. 20, 2022), https://www.11alive.com/article/news/local/2020-election-lawsuit-ga-supreme-court/85-efbeb860-ee50-4ea6-8356-31532e413269.

covered it—and how social media carried it."[8] That political censorship worked to the benefit of Joe Biden,[9] dishonestly giving a law enforcement imprimatur upon Twitter's agenda to defeat President Trump at the expense of free, and accurate, reporting.

Even before the "Twitter Files" were released a CNN poll showed 56% of Americans have little or no confidence in our elections, with "just 68% of democrats" confident and "41% of independents."[10] The CNN Editor-at-large ascribes this doubt to "the insidiousness of Trump's big lie" and likened his claims to an ear worm "wheedling [its] way into the consciousness of the public," but President Trump has plenty of factual basis and widespread support for his consistently–held position on the 2020 election's lack of accuracy and integrity.

### D. CNN's Position Takes the "News" Out of Cable News Network.

Without even registering a whiff of irony, CNN's primary defense to the Complaint is that the news network is so uniform in giving its viewers hyperbole and opinion about President Trump that it is immune from a defamation challenge. The embarrassing concession that they provide fact-free news does not support dismissal of the Complaint.

#### 1. CNN is Not Entitled to Any Privilege for Rhetorical Hyperbole.

A defendant can only escape liability for defamation by contending it is "rhetorical hyperbole" when "the language itself negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the defamation." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378-79 (S.D. Fla. 2006). To determine if a statement is "an expression of fact or an expression of rhetorical hyperbole, context is paramount[.]" *Id.*

The contours of "rhetorical hyperbole" were discussed by the Southern District of Florida in *Fortson v. Colangelo*. *Id.* at 1379. In that case, a professional basketball player sued a columnist

---

[8] Lee Fang (@lhfang), Twitter (Dec. 19, 2022, 6:12 PM), https://twitter.com/lhfang/status/1604977967754461185.

[9] Rich Noyes, *Special Report: The Stealing of the Presidency, 2020*, MRCNEWSBUSTERS, (Nov. 24, 2020), https://www.newsbusters.org/blogs/nb/rich-noyes/2020/11/24/special-report-stealing-presidency-2020 (reporting that 17 percent of Biden voters would not have voted for him had they been aware of the censored news stories).

[10] Chris Cillizza, *Here's the terrible reality: Trump's election lie is on the march*, CNN, (Feb. 11, 2022), https://www.cnn.com/2022/02/11/politics/trump-big-lie-2020-election-poll/index.html; *see also* Compl. ¶ 28.

for calling the player "thugged out[,]" a "vacant lot[,]" and a "gangsta or wangsta," in his weekly column. *Id.* at 1376. The court concluded that the columnist's statements were not actionable given that they were "made through a medium that foster[ed] debate" and that "routinely use[ed] figurative or hyperbolic language." *Id.* at 1381. Given this context, the court reasoned that "a reasonable reader [was] more likely to regard its content as opinion and/or rhetorical hyperbole," and would be unlikely to interpret the "colorful language" as a literal assertion of fact. *Id.* By contrast, CNN did not use the terms "Nazi" "Hitler" "fascist," and the "Big Lie," in a hyperbolic or rhetorical manner. Rather, CNN used these terms to draw a direct and literal comparison between the Plaintiff, Nazism, and fascist leadership more generally. CNN's statements seriously attempt to falsely state that the Plaintiff intentionally used a Nazi-like propaganda technique to preserve his political power.

For example, the article written by Ruth Ben-Ghiat directly labels President Trump as a "leader of authoritarian intentions and tendencies."[11] Defendant now claims this is simply "a political point," being made by the author, but the direct and targeted nature of the label reveal a more literal assertion. *See Donald J. Trump for President, Inc. v. CNN Broadcasting, Inc.*, 500 F.Supp.3d 1349, 1356 (N.D. Ga. 2020) (finding that an article, published as an editorial, was not protected opinion given that it made factual assertions without "qualifying" or "softening language"). Similarly, in the article "Here's the terrible reality: Trump's election lie is on the march," Chris Cillizza unequivocally refers to "Trump's big lie."[12] There is a direct assertion that Plaintiff has his own, authoritarian Big Lie. Unlike the commentary in *Fortson*, the statements made by CNN are intended to be, and are likely to be, taken literally by the average CNN viewer.

Indeed, audience responses on social media indicate that CNN viewers have, after viewing CNN programming, come to associate the Plaintiff with fascist figures such as Hitler and the Nazis. For example, in response to the Fareed Zakaria special, "The Fight to Save Democracy," one

---

[11] Compl. ¶ 28 (citing Ruth Ben-Ghiat, *Trump's big lie wouldn't have worked without his thousands of little lies*, CNN, (Jan. 25, 2021), https://www.cnn.com/2021/01/25/opinions/big-lie-ben-ghiat/index.html).

[12] Compl. ¶ 28 (citing Chris Cillizza, *Here's the terrible reality: Trump's election lie is on the march*, CNN, (Feb. 11, 2022), https://www.cnn.com/2022/02/11/politics/trump-big-lie-2020-election-poll/index.html).

viewer tweeted, "*The similarity between Hitler in 1930s Germany and Trump in 2016 are notorious. And the way you made the segment by on and off alternate images of both. Even if not apparent before, you made it now.*"[13] Thus, the instant case is distinguishable from *Fortson*. There, no reasonable audience member would believe that the defendant was literally a "gangsta" or "vacant lot," based on the rhetorical language in the defendant's column. By contrast, at least **some** CNN's audience members have been unjustly led to believe that Plaintiff literally is a fascist leader—akin to the most repugnant figure in modern history, Adolf Hitler.

Further, unlike the column in *Fortson*, CNN should not be considered a medium through which subjective viewpoints are expected to be communicated. As an initial matter, CNN's own name—Cable News Network—denotes its role as a news source. Further, its slogan, "the most trusted name in news," Compl. ¶ 1, signals the network's self-proclaimed designation as a reliable source of objective information. Given this verbiage, it would be reasonable for a viewer to believe that CNN holds itself out as an unbiased news source rather than an opinion-driven platform.

Here, Defendant requests that this Court grant it "wide[] latitude," given that its statements were made in reference to the "the integrity of the 2020 presidential election." Motion at 12. According to Defendant, the use of epithets such as "racist" "fascist" and "Neo-Nazi," are necessary to ensure the "public debate will not suffer for lack of imaginative expression." *Id.* at 11 (internal quotation marks omitted) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). CNN did not use the incendiary language as satire or parody. The language was published and broadcast by a network claiming to be the "most trusted name in news." *Bennet v. Hendrix*, 325 Fed.Appx. 727, 741 (11th Cir. 2009) (recognizing that "the tone of the speech and its medium of expression" are important considerations when determining whether a statement constitutes rhetorical hyperbole). Publications featuring photos of Plaintiff alongside this language created an even stronger and more literal false association between Plaintiff and Hitler. The literality of these assertions was bolstered by the fact that they come from a network claiming to be an objective news source.

---

[13] Compl. ¶ 21 (citing https://twitter.com/FareedZakaria/status/1480611413777436683 (last visited Aug. 20, 2022).

11

## 2. CNN is Not Entitled to Any Privilege for Opinion.

Generally, a statement is considered pure opinion only when it is based upon facts that the communicator sets forth in a publication, or that are otherwise known or available to the reader or listener as a member of the public. *Hay v. Indep. Newspapers, Inc.*, 450 So.2d 293, 295 (Fla. 2d DCA 1984). However, the "Supreme Court [has] recognized that [e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." *LRX, Inc. v. Horizon Assocs. Joint Venture*, 842 So.2d 881, 885 (Fla. 4th DCA 2003) (internal quotation marks and alterations omitted) (quoting *Milkovich*, 497 U.S. at 18-19); *see also Anson v. Paxson Commc'ns Corp.*, 736 So.2d 1209, 1211 (Fla. 4th DCA 1999).

CNN's publications contain false assertions of fact that disqualify them from inclusion in the category of "pure opinion." The statements at issue assert that, by voicing his concerns regarding the integrity of the 2020 election, Plaintiff has perpetuated a "Big Lie,"—*i.e.*, a propagandistic strategy utilized by Nazis such as Hitler. This assertion is false because Plaintiff's election integrity concerns are genuine, not propaganda. CNN has also asserted that Plaintiff is a destructive, fascist leader. Again, this is an untrue statement capable of being disproven. Simply labeling statements as "opinion," does not negate that they are false assertions of facts.

CNN made an identical argument in *Dershowitz*, contending that "because the impeachment trial was widely covered by it and other media outlets, the underlying facts were 'known to the audience[.]'" 541 F. Supp.3d at 1367. CNN reasoned that, under these circumstances, the statements at issue constituted non-actionable statements of pure opinion. *Id.* This Court rejected CNN's argument, instead concluding that "the commentator's statements set forth in the [c]omplaint were not pure opinion but instead were mixed expressions of opinion that could reasonably be construed as defamatory." *Id.*

The statements at issue in the Complaint are, at a minimum, mixed expressions of opinion. An expression of mixed opinion is "based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication.

12

Rather, the communicator implies that a concealed or undisclosed set of defamatory facts would confirm his opinion." *Hay*, 450 So.2d at 295; *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981). Simply put, a mixed expression of opinion "implies the allegation of undisclosed defamatory facts as the basis for the opinion." *Dershowitz*, 541 F. Supp.3d at 1367 (internal citations omitted). Statements which imply an underlying attack on an individual's character, without citation or attribution, may be considered mixed expressions of opinion. *Smith v. Taylor County Publ'g Co*. Inc., 443. So.2d 1042, 1047 (Fla. 1st DCA 1983).

If the Court concludes that the statements at issue are not assertions of fact, it should, at a minimum, conclude that they are mixed expressions of opinion. CNN's statements imply an underlying attack on Plaintiff's character. When CNN anchors refer to Plaintiff's "Big Lie," there is an underlying false assertion that Plaintiff is akin to Hitler—*i.e.*, a fascist leader willing to use propaganda for political power. In this regard, CNN's statements are similar to the statements made by the defendant in *Smith*, because they refer to underlying, but (often) unstated facts (the origins of Hitler's and Goebbels's "Big Lie") in order to malign Plaintiff's character.

### E. CNN's Draftsmanship Challenges Fail to Support Dismissal.

CNN raises several arguments in an effort to claim deficient pleading by Plaintiff. None are legally or factually supported.

#### 1. CNN Wrongly Attempts to Cull Allegations Outside of One Paragraph.

Plaintiff's Complaint presents a framework outlining how CNN set out to malign Plaintiff through endless defamatory attacks. While the specific claims for relief are distilled to meet statutory requirements, the nature of CNN's libelous and slanderous conduct exceeds the scope of typical defamation actions. Plaintiff could not feasibly bring a claim for each and every defamatory statement published by CNN.[14] However, allegations that demonstrate the pervasiveness of CNN's defamation serve to support Plaintiff's specific claims.

CNN would have the Court restrict its analysis by focusing exclusively on one paragraph of the 28-page Complaint. Motion at 2. CNN's rationale: Plaintiff's defamation claims are

---

[14] See for instance, Paragraph 27 of the Complaint, identifying research that CNN has used the term the "Big Lie" in reference to the Plaintiff more than 7,700 times.

grounded in five publications for which Plaintiff gave CNN the opportunity to retract, as required under Florida law before a defamation action may be brought. *See* Motion at 2; *see also* Fla. Stat. § 7701.01. The notice requirement limits the particular statements that are presented as defamatory to the jury; but Defendant is not entitled to ignore every other allegation that supports Plaintiff's claims.

While a court is generally limited to the four corners of the complaint at this stage, *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009), the Court should look at **all** allegations in the complaint, not just those referenced in the claims for relief, or those that suit the Defendant's account. As the District Court of Appeal of Florida stated in *Rasmussen v. Collier Cnty. Pub. Co.*: "In assessing whether an allegedly libelous statement is opinion, the court must construe the statement in its totality … It must take into account all of the circumstances surrounding the publication, including the medium by which it was disseminated and the audience to which it was published." 946 So. 2d 567, 571 (Fla. 2d DCA 2006) (citations omitted). The Court's assessment should incorporate not just the contents of each specific publication but the relevant context from the surrounding allegations in the Complaint.

Nonetheless, standing alone, each of the five publications that were noticed to Defendant under Florida Statute Section 770.01 provide ample basis for his claims, and do not merit any insulation from liability. Whether the proponent of a particular statement is a CNN host, a paid contributor, or a regular guest, each publication was falsely presented as factual and the impact on viewers and readers was both predictable and desirable. CNN knowingly chose to sabotage a presidential candidate with the most odious, untrue personal comparison imaginable. The five counts reflecting that decision are adequately pled and merit consideration by a jury.

### 2. The Plaintiff Has Sufficiently Pled Allegations Required of a Public Figure.

Plaintiff alleges the elements required of a public figure: (1) the alleged defamatory statements are "sufficiently factual to be susceptible of being proved true or false"; (2) the statements are false; and (3) CNN made the alleged defamatory statements with "actual malice"— "with knowledge that it was false or with reckless disregard of whether it was false or not." *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021), *cert. denied*

14

*sub nom. Coral Ridge Ministries Media, Inc. v. S. Poverty L. Ctr.*, 213 L. Ed. 2d 1102, 142 S. Ct. 2453 (2022) (internal citations omitted). The Complaint plausibly alleges these elements.[15]

### a. Plaintiff's Allegations are Sufficiently Factual to be Susceptible of Being Proved True of False.

The Supreme Court's opinion in *Milkovich*, 497 U.S. at 1, is instructive here. In *Milkovich*, the Supreme Court held that a reporter's column that implied the plaintiff perjured himself could permit recovery for defamation. *Id.* at 21. In assessing whether the column was defamatory, the Supreme Court noted that a statement may be sufficiently factual to be susceptible of being proved true or false because of its connotation. *Id.*; *see also Pullum v. Johnson*, 647 So. 2d 254, 257 (Fla. 1st DCA 1994). The Supreme Court highlighted that an accusation that someone is a liar could be defamatory, and "couching such statements in terms of opinion does not dispel these implications." *Milkovich*, 497 U.S. at 19. In other words, "connotations" and "implications" can be the basis of a defamation claim, capable of being assessed for their veracity. Connotations that the Plaintiff is the perpetrator of the "Big Lie," a tactic of Hitler, supports a defamation claim.

The Defendant cites several inapposite cases to support its challenge to this Complaint, but all of them are procedurally distinct from the present matter.[16] The D.C. Court of Appeals decided *Ollman* on appeal after the defendants' summary judgment motion was granted. In *Ollman*, at issue were the defendants' queries in a Washington Post column whether the plaintiff was a Marxist activist and the record reflected that the plaintiff conceded he was a Marxist. 750 F.2d. at 972, 987. Further, the record reflected that the Washington Post published a letter from the plaintiff responding to the defendants' article four days after the article appeared. *Id.* at 973. CNN has given Plaintiff no similar opportunity to address its audience fairly--that is not a page from CNN's *playbook*. Moreover, while these cases involve evocative terms, they do not rise to the degree of attack—or trigger the same level of animus—as the allegations set forth in the Complaint.

### b. The Statements at Issue Are Identified as False.

---

[15] Note that the Plaintiff addresses actual malice in Section IV. A. of this Reply.
[16] Defendant cites a Second Circuit case, *Buckley v. Littell,* 539 F.2d 882 (2d Cir. 1976), and a D.C. Court of Appeals case, *Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984), as examples in which the descriptions "fascist" and "Marxist" were found not to be defamatory. Neither of these cases were decided on a motion to dismiss.

Defendant contends that "*nowhere* does the Complaint actually allege a specific false statement of fact in the Publications." Motion at 8. The falsity of each statement is explicit in the Complaint. *See*, *e.g.*, Compl. ¶¶ 39, 42, 48, 49. It is also inferred when the Complaint alleges that CNN is liable "for the harm it has caused to [Plaintiff's] reputation by the false, defamatory, and inflammatory mischaracterizations of him," Compl. ¶ 36, and the Court can rely on reasonable inferences drawn from factual allegations in denying a motion to dismiss. *Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, 538 F. Supp. 3d 1309, 1321 (S.D. Fla. 2021) (internal citations omitted) ("When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged."). The extent of falsity is properly alleged and should be for the trier of fact.

### F.  Defendant Misconstrues and Misapplies the Plausibility Standard.

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint provide a "short and plain statement of the claim showing the pleader is entitled to relief." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). The plaintiff is not required to provide "detailed factual allegations," but instead, need only "state a claim for relief that is plausible on its face." *Id.* at 555, 570. A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The ultimate persuasiveness of Plaintiff's evidence is not relevant to the Court's plausibility analysis. To the contrary, courts caution "against equating plausibility with an analysis of likely success on the merits." *Bella Int'l, LLC v. Armbruster*, 2020 WL 813666, at *3 (D.P.R. Feb. 18, 2020) (internal quotation marks and citations omitted). It is not Plaintiff's role to convince the court that its factual allegations ultimately will prove persuasive to a fact finder. At the motion to dismiss stage, "it is not the district court's province to dismiss a plausible complaint because it is not as plausible as the defendant's theory. The test is whether the complaint is plausible, not whether it is less plausible than an alternative explanation." *Palin v. New York Times Co.*, 940 F.3d

804, 815 (2d Cir. 2019). Defendant's theory of what is factually plausible is irrelevant to the Court's analysis at this stage.

Defendant argues that Plaintiff's "overall theory of falsity for the 'Big Lie' is implausible," given that the average audience-member "would not plausibly understand 'Big Lie' to be an allusion to Nazis (as opposed to just a lie that is 'Big')." Motion at 9. Simply put, Defendant argues that it is not **believable** that the average CNN viewer would understand CNN's reference to the "Big Lie," as a reference to Nazi propaganda. *Id.* This argument is both incorrect and confuses the relevant inquiry: An implausible complaint is one that fails to allege a legal theory that prevails if the facts as alleged are true, not one that asserts facts which the defendant contends the fact finder should not believe. *See Lait v. Medical Data Sys., Inc.*, 755 Fed.Appx. 913, 916 (11th Cir. 2018).

This Court's recent decision in *Dershowitz* is instructive as to the requisite showing of plausibility in a defamation claim and, in particular, that a plaintiff need only show that **some** average viewers **could** understand the statement to be defamatory. 541 F.Supp.3d at 1354. In *Dershowitz*, the plaintiff alleged that CNN broadcasted a "truncated clip" of plaintiff's statements during President Trump's impeachment trial to "'fool its viewers' into believing that [the plaintiff] actually said that a President could commit illegal acts so long as he thought it would help his reelection and that his reelection was in the public interest." *Id.* at 1368. The plaintiff contended that because CNN had only played a portion of the clip, it had taken his statements out of context to lead viewers to believe he had "'lost his mind.'" *Id.* But the complaint also acknowledged that CNN had played the entirety of the clip earlier in the day. *Id.* at 1359 n.2. This Court held that "the fact that CNN played Dershowitz's entire statement earlier in the day" did not preclude the plaintiff from plausibly alleging defamation. *Id.* at 1369. The Court reasoned that while "*some* viewers may well have been able to put the truncated clip and the commentator's statements into context," others, who had not seen the earlier broadcasts, may have viewed Dershowitz's statements through the defamatory lens alleged by the plaintiff. *Id.* (emphasis added). Although the alleged defamatory meaning may not have been understood by ***all*** viewers of the broadcast, the fact that ***some*** viewers may have construed the defamatory meaning was enough to survive the defendant's motion to dismiss. *Id.* The same result should be reached here.

17

Plaintiff has plausibly established that, given the language in CNN's publications and broadcasts, at least some CNN viewers understood the defamatory meaning behind the network's statements addressing President Trump's election integrity concerns. Specifically, Plaintiff's Complaint provides numerous examples in which CNN used the phrase the "Big Lie," to create a defamatory association between President Trump and Hitler, the Nazis, and authoritarian leadership. For example, one such article cited in Plaintiff's Complaint libelously calls President Trump "a leader of authoritarian intentions and tendencies."[17]

Given these articles directly, explicitly, and falsely assert a connection between Plaintiff and Hitler-styled authoritarianism, Defendant's argument that the average viewer would not know the "Big Lie" allusion is without merit. Even if the average CNN audience-member is unaware of the linguistic origins the "Big Lie," CNN's reporters established the defamatory connection for them. As alleged throughout the Complaint, CNN has featured guests and anchors who consistently have wrongfully asserted an association between President Trump and Hitler, attempting to drive the point home to the average viewer.

CNN's less direct references to President Trump and Nazism still would be viewed as a clear association by the average viewer. For example, juxtaposing President Trump's election integrity claims against images/discussions of Nazis sends an undeniably defamatory message. Specifically, Plaintiff has provided examples of reactive tweets posted by CNN viewers praising CNN for so clearly illustrating the "parallels" between the "rise of Hitler," and President Trump's election integrity concerns. Compl. ¶ 17.

Even if this Court does not consider these tweets to be evidence of what **every** average CNN viewer understood, dismissal still would not be appropriate, since they prove that **certain** average CNN viewers did fall prey to the defamatory statements. At a minimum the term should be considered ambiguous and thus **susceptible** to defamatory meaning.[18] Under such

---

[17] Compl. ¶ 28 (citing Ruth Ben-Ghiat, *Trump's big lie wouldn't have worked without his thousands of little lies*, CNN, (Jan. 25, 2021), https://www.cnn.com/2021/01/25/opinions/big-lie-ben-ghiat/index.html).

[18] As noted in the Complaint, false comparisons to Hitler have historically been considered defamatory. *See, e.g.*, *State v. Guinn*, 347 S.W.2d 44, 46–47 (1961) (holding that publication in a

circumstances, "it is for the trier of fact to decide whether or not the communication was understood in the defamatory sense." *Wolfson v. Kirk*, 253 So.3d 774, 77-79 (Fla. 4th DCA 1973).

Importantly, CNN does not suggest that characterizations of an individual as Hitler-like are not susceptible of defamatory meaning. Rather, CNN invites this Court to accept its theory that it is unlikely that a CNN viewer would understand the network's false characterizations of President Trump to actually be wrongful references to Hitler and Nazism. In essence, Defendant has asked this Court to play factfinder and evaluate the persuasiveness of the factual contentions supporting Plaintiff's claims.

V. **Conclusion**

Although "vigorous reportage" of political figures is "necessary for the optimal functioning of democratic institutions," the press is by no means provided with "absolute immunity in its coverage of public figures[.]" *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 687-88; *see also Curtis Pub. Co. v. Butts*, 388 U.S. 130, 150 (1967).

In CNN's Motion, it asserts its "news" reporting to be rhetorical hyperbole, opinion, and unverifiable, nonfactual statements, and as such claims that it is protected from liability under First Amendment principles. It shockingly does so while holding itself out as a premier news source. Defendant's arguments only support Plaintiff's contention that CNN is indeed "fake news." But this does not excuse Defendant from liability for defamation, as this Court need not accept as true its assertions. Rather, on a motion to dismiss, the Court must accept as true all of Plaintiff's factual

---

newspaper that a District Attorney General used "Hitler-like tactics" in his investigations was libelous *per se* because "[w]hen we apply this term to a District Attorney General, who is a quasi-judicial officer representing the State, and who is presumed to act impartially and in the interest of justice, *it clearly infers that this officer in his acts is guilty of official oppression*.") (emphasis added); *O'Donnell v. Philadelphia Rec. Co.*, 51 A.2d 775, 777 (1947) (holding that defendants committed libel *per se* when they accused a news reporter of being a Naziphile in sympathy with Hitler's liquidation of Jews); *and Goodrich v. Rep. Pub. Co.*, 199 S.W.2d 228, 230 (Tex. Civ. App. 1946), *writ refused* (finding publishing company liable for libel *per se* for an article stating the plaintiff was pro-Nazi).

19

allegations. Consequently, this Complaint is sufficiently pled to support proceeding to a jury trial on the merits.

Dated: December 30, 2022                             Respectfully Submitted,

                                                      /s/ Lindsey Halligan
Lindsey Halligan
Florida Bar No. 109481
511 SE 5th Avenue
Fort Lauderdale, FL 33301
Telephone: (720) 435-2870
Email: lindseyhalligan@outlook.com


   /s/   James M. Trusty
James M. Trusty
*Pro Hac Vice*
Ifrah Law PLLC
1717 Pennsylvania Ave., N.W. Suite 650
Washington, DC 20006
Telephone: (202) 524-4176
Email: jtrusty@ifrahlaw.com

*Attorneys for President Donald J. Trump*